# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-KA-01496-SCT

*RICKY FRANKLIN a/k/a RICKY LEVERT*
*FRANKLIN a/k/a RICKY L. FRANKLIN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/01/2012 |
| TRIAL JUDGE: | HON. JEFF WEILL, SR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: HUNTER NOLAN AIKENS |
| |     GEORGE T. HOLMES |
| | BRICE RASHOD WHITE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ELLIOTT GEORGE FLAGGS |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED IN PART |
| | AND REMANDED - 02/20/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., LAMAR AND PIERCE, JJ.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1. Ricky Franklin appeals a judgment of conviction from the Circuit Court of Hinds County, Mississippi, Second Judicial District. Franklin was convicted on one count of kidnapping and on one count of aggravated assault with a deadly weapon. He was sentenced to thirty years and twenty years, respectively, to run consecutively. A mistrial was entered

for one count of forcible rape, and a not-guilty verdict was entered for one count of sexual battery.

¶2.    Franklin was denied his motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, for a new trial.  He appeals, alleging the following five issues: (1) the trial court erred in refusing to instruct the jury on simple assault as a lesser-included offense of aggravated assault, (2) the trial court erred in allowing improper opinion testimony from numerous witnesses concerning whether a bottle could cause serious bodily injury, (3) the trial court erred in allowing prejudicial hearsay statements that Randolph White allegedly made to police, (4) Franklin's right to a fair trial was violated by inflammatory statements in the prosecution's closing argument, and (5) the trial court erred in denying Franklin's motion to dismiss for violation of his right to a speedy trial.  The sufficiency of the evidence regarding the kidnapping and aggravated-assault convictions was not raised on appeal.

¶3.    We reverse and remand the conviction of aggravated assault under issue one; therefore we will not discuss the merits of issue two.  We affirm the conviction of kidnapping under issues three, four, and five.

**STATEMENT OF THE FACTS**

¶4.    Ricky Franklin and Jessica Nolan met for the first time at a barbeque on the day of the alleged incidents.  They were thereafter seen together at Dick's Pool Hall and Richie's One Stop Shop.  After leaving the pool hall, Nolan and Franklin went to Franklin's home, where the assault and kidnapping occurred.  It is undisputed that Nolan had numerous injuries from the altercation and that blood spatter was found on the floor and walls of the home.

2

¶5. At trial, Nolan was the State's key witness to the events that transpired. Nolan claimed that Franklin was acting like a "big shot" at the barbeque by handing out money to people, and that he had promised to give her at least one hundred dollars. He had also given her fifty dollars to purchase marijuana. Nolan stated that, while they were at Franklin's house, he tried to give her forty-five dollars, but she rejected the money because he had promised to give her more. She claimed that the money was not for sex, but instead, he merely promised her the money for no reason. After she refused to accept the money, Franklin began to beat her and began to claim that she had stolen his money. Among other allegations, Nolan testified that he raped her several times that night and that he beat her with his fists and a bottle.

¶6. Darrell Davis and Randolph White both testified to going to the home and seeing that Franklin and Nolan had been in a physical altercation. Davis stopped by the home first and alerted White, Franklin's uncle, that he should check on the situation. Both witnesses testified to being concerned with what exactly was taking place between Franklin and Nolan, and it appeared that they had been fighting. Nolan claimed that she asked both men to help her when they were at the home, but Davis and White both testified that she did not ask them for help. White instructed his sister, Deborah Robinson, to call 911 after Franklin refused to let White take Nolan home. Robinson told the 911 dispatcher that a woman had been beaten and that they could hear it. At trial, Robinson claimed she did not hear anything that night nor did she see Nolan; instead, she was only relaying what her brother had told her.

3

She testified to going to the house with White, but she saw Franklin only, who appeared to have a knot on his forehead.

¶7. The State presented testimony from several of the officers who were present at the scene and entered the home. Testimony described the blood spatter found on the walls and floor and the overall appearance that an altercation had taken place. Testimony revealed that Nolan was found unresponsive on a couch in one of the back rooms. Officers Leggette and Mahaffey were among the testifying officers who were present at the scene.

¶8. Nurse Regina Morgan, who treated Nolan in the emergency room, testified that Nolan had stated she had been beaten with fists and a bottle. Nolan's medical records also reflected this statement. Morgan also testified that Nolan told her Franklin had raped her, choked her, and tried to kill her. Nurse Morgan and Dr. Andrew Anderson, Nolan's treating physician, identified Nolan's injuries: a fractured nose; bruising and swelling of the face, nose, left eye, and bottom lip; abrasions to her right knee, both elbows, and neck; small abrasions to her left cheek; and redness on her right cheek.

¶9. Kathryn Rodgers, a forensic DNA analyst, testified to the blood samples and DNA. Rodgers established that the blood spatter found on the walls and floor was a match to Nolan's blood sample. She provided that one of the liquor bottles from Franklin's home had small splatters of blood on the bottom of the bottle, which matched Nolan's blood, and the DNA on the neck of the bottle could not exclude Franklin's DNA. Rodgers explained that the blood on the bottle could be present from direct contact with Nolan or from the bottle otherwise coming into contact with the blood, such as from blood spatter. She also provided

4

that the DNA on the neck of the bottle could be present from holding the bottle for drinking purposes, from holding it to hit someone, or otherwise.

¶10. Subsequently, a mistrial was entered for the charge of rape, and Franklin was found not guilty of sexual battery. He was found guilty of kidnapping and aggravated assault.

## ANALYSIS

### I. Whether the trial court erred in refusing to instruct the jury on simple assault as a lesser-included offense of aggravated assault.

¶11. The trial court's denial of a lesser-included-offense instruction is reviewed de novo. *Gilmore v. State*, 119 So. 3d 278, 286 (Miss. 2013) (citing *Downs v. State*, 962 So. 2d 1255, 1258 (Miss. 2007)). This Court has decided, time after time, that lesser-included-offense instructions should not be "indiscriminately granted;" instead, the jury should not be presented with a lesser-included-offense instruction unless the record provides an "evidentiary basis" for the instruction. *Lee v. State*, 469 So. 2d 1225, 1230 (Miss. 1985) (citing *Ruffin v. State*, 444 So. 2d 839, 840 (Miss. 1984); *Colburn v. State*, 431 So. 2d 1111, 1114 (Miss. 1983)). Additionally, lesser-included-offense instructions should not be granted on mere speculation. *Moody v. State*, 841 So. 2d 1067, 1097 (Miss. 2003) (citing *McGowan v. State*, 541 So. 2d 1027 (Miss. 1989) (citing *Mease v. State*, 539 So. 2d 1324, 1329 (Miss. 1989))).

> A lesser-included offense instruction should be granted unless the trial judge and ultimately this Court can say, taking the evidence in the light most favorable to the accused and considering all the reasonable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of a

5

lesser-included offense (conversely, not guilty of at least one essential element of the principal charge).

*Moody*, 841 So. 2d at 1097 (citing *Harper v. State*, 478 So. 2d 1017, 1021 (Miss. 1985); *Fairchild v. State*, 459 So. 2d 793, 800 (Miss. 1984); *Lee*, 469 So. 2d at 1230-31)). "A defendant must point to some evidence in the record from which a jury reasonably could find him not guilty of the crime with which he was charged and at the same time find him guilty of a lesser-included offense." *Gilmore*, 119 So. 3d at 286 (quoting *Goodnite v. State*, 799 So. 2d 64, 69 (Miss. 2001)).

¶12.    Franklin was indicted pursuant to the language of Mississippi Code Section 97-3-7(2)(a)(ii), which provides:

> A person is guilty of aggravated assault if he . . . (ii) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm. . . .

Miss. Code Ann. § 97-3-7 (2)(a)(ii) (Rev. 2006).

¶13.    Franklin argues that the trial court, in denying the simple-assault instruction, improperly presumed that the bottle was a deadly weapon; thus the jury was not allowed to consider simple assault. At trial, Franklin asserted that it was for the jury to weigh and decide whether Nolan was hit with a fist or a bottle or both; therefore, the lesser-included-offense instruction was warranted in the event the jury found she was not hit with the bottle or that the bottle was not a deadly weapon. Under the facts of this case, we agree.

¶14.    The jury was given the following instructions:

> (1) If you find from the evidence in this case beyond a reasonable doubt that:
> . . . Ricky Levert Franklin . . . did wilfully and unlawfully, cause or attempted

6

to cause bodily injury; to Jessica Renee Nolan . . . with a deadly weapon. Then you shall find the defendant . . . guilty of aggravated assault as charged. . . .

(2) It is a question of fact for you to determine whether the bottle claimed to have been used by the defendant . . . was a deadly weapon in the manner in which it was claimed to have been used to strike the victim in this case.

(3) A deadly weapon is defined as any object, article or means which, when used as a weapon under the existing circumstances is reasonably capable of producing or likely to produce death or serious bodily harm upon whom the object, article or means is used.

¶15.    Franklin was denied the following simple-assault instruction:

If you find from the evidence in this case beyond a reasonable doubt that: Ricky L. Franklin . . . did purposefully, knowingly or recklessly; cause bodily harm to Jessica Nolan; then you shall find Ricky L. Franklin guilty of Simple Assault.

¶16.    In proving aggravated assault, the State chose to center its case solely on the bottle being a deadly weapon. The jury was not instructed that Franklin could be guilty of aggravated assault by other means, as is provided in the language of the statute.

¶17.    Thus, because of the substantial credible evidence that some type of assault had occurred and because defense counsel took the position that Franklin hit Nolan with his fists alone, the jury should have been given the lesser-included-offense instruction in the event of a finding that the bottle was not a deadly weapon or that the bottle was not used. *Lee v. State*, 469 So. 2d 1225, 1231 (Miss. 1985) (The jury's findings may be altered without a lesser-included-offense instruction where the only other option would be to find the defendant not guilty).

7

¶18. This Court stands firm on the long-standing principle that it is the jury's responsibility to decide if an instrument constitutes a deadly weapon. *Duckworth v. State*, 477 So. 2d 935, 938 (Miss. 1985) (citing *Jackson v. State*, 404 So. 2d 543 (Miss. 1981); *Shanklin v. State*, 290 So. 2d 625 (Miss. 1974); *Johnson v. State*, 230 So. 2d 810 (Miss. 1970); *Cobb v. State*, 233 Miss. 54, 101 So. 2d 110 (1958); *Golden v. State*, 233 Miss. 649, 78 So. 2d 788 (1955)) (citations omitted).

¶19. When determining whether to allow the lesser-included-offense instruction, the trial court improperly stated that there was evidentiary support that Nolan's head injury was caused by the bottle alone. Whether her injuries were caused by the bottle was an issue of fact to be determined by the jury. The trial court expressly stated it believed there was no evidentiary support for the lesser-included-offense instruction by referencing Nolan's isolated testimony during the State's direct examination, when she described being hit in the head by only the bottle. However, an examination of the record reveals that, during the State's redirect, Nolan expressly stated that she was hit with both a fist and a bottle. Also, Nurse Morgan testified that Nolan told her at the hospital that she had been hit with both fists and a bottle. Accordingly, it was for the jury alone to determine whether the bottle actually was used.

¶20. We find that the trial court erred by not allowing the jury to consider the lesser-included-offense instruction of simple assault, because we cannot say that it would be impossible for a reasonable juror to find that Franklin did not use the bottle or that the bottle was not a deadly weapon. *Moody*, 841 So. 2d at 1097 (citing *Harper*, 478 So. 2d at 1021;

8

*Fairchild*, 459 So. 2d at 800; *Lee*, 469 So. 2d at 1230-31). Therefore, we reverse in part and remand this case for a new trial.

## II. Whether the trial court erred in allowing statements that Randolph White allegedly made to police.

¶21. Franklin argues that the trial court erred by allowing inadmissable hearsay statements from Officer Ladnier. Over the objection of defense counsel, Officer Ladnier stated that once he arrived on the scene, he spoke with Randolph White, Franklin's uncle, who instructed them to ". . . get down there before he killed her." Officer Ladnier also provided that White stated he saw Franklin holding Nolan by the hair and that Nolan had asked him for help. Randolph White testified at trial, stating that he did not communicate those statements to Officer Ladnier.

¶22. Admission or suppression of evidence is based on the discretion of the trial court, but the trial court's discretion must be consistent with the Mississippi Rules of Evidence. *Clemons v. State*, 732 So. 2d 883, 887 (¶18) (Miss. 1999) (citations omitted). Reversal is required only where abuse of that discretion can be shown to cause prejudice to the defendant. *Id.* at 888.

¶23. Hearsay is an out-of-court statement offered in court by someone other than the declarant to prove the truth of the matter asserted. Miss. R. Evid. 801(c). The trial court overruled defense counsel's objections on the basis that the statements were offered to show why the officer acted as he did. Franklin disagrees, submitting that the statement was to prove the truth of the matter asserted: (1) that Randolph thought Franklin was going to kill

9

Nolan; (2) that Randolph saw Franklin holding Nolan by her hair; and (3) that Franklin asked Randolph for help. After a close inspection of the record, we agree with the trial court's ruling that the statement was not offered to prove the truth of the matter asserted but to prove why Officer Ladnier acted as he did.

¶24. When the State elicited these statements from Officer Ladnier, the record reflects that the State was unfolding the series of events that transpired that night. Prior to trial, a motion hearing was held regarding suppression of evidence from Franklin's home, because the officers entered the home without a warrant based on exigent circumstances. The trial court ruled sufficient evidence existed to support that an exigent circumstance had existed. Although White denied making the alleged hearsay statements to Officer Ladnier, he did provide that he was concerned that the situation could escalate without intervention. Officer Ladnier's statements were used to show how the events progressed that night and to show the urgency of the situation, which both were important at the trial stage to explain to the jury why and how the officers entered the home, where they subsequently found Nolan unconscious.

¶25. The State correctly points to the fact that Officer Ladnier's statements concerned what was said to him during his investigation. In *Gayten v. State*, this Court ruled testimony by a police officer repeating statements made over a wire tap by an undercover agent was not hearsay, since the only purpose of the statements was to present that they were, in fact, said. *Clemons*, 732 So. 2d at 888 (¶20) (*citing Gayten v. State*, 595 So. 2d 409, 415 (Miss. 1992)). Further, the statements provided "the nature of the transaction" and "that there was a

10

transaction." *Id.* (citing *Gayten*, 595 So. 2d at 414). *See also Swindle v. State*, 502 So. 2d 652, 657-58 (Miss. 1987) ("an informant's tip is admissible to the extent required to show why an officer acted as he did and was at a particular place at a particular time. . . ."); *Smith v. State*, 984 So. 2d 295, 300 (Miss. Ct. App. 2007) (statements are nonhearsay when offered to show the course of investigation).

¶26.    When determining whether a statement is prejudicial, this Court has established an objective test asking ". . . how a reasonable objective observer would under the circumstances be likely to perceive the statement." *Clemons*, 732 So. 2d at 888 (¶22) (quoting *Turner v. State*, 573 So. 2d 1335, 1338 (Miss. 1990)). By applying this rule, this Court found:

> The Statement testified to by Sheriff McKee that he had heard that Clemons and his brother were in possession of a pistol that may have been involved in the murder when heard by the jury would be perceived as a statement proving that Clemons did in fact have possession of the murder weapon, the truth of the matter asserted. There is no reason for Sheriff McKee to explain why he went to Davis's home.

*Clemons*, 732 So. 2d at 888 (¶22). Even though this Court found the admission of the statements to be in error, we find the error here to be harmless. *Id.* at 899 (¶23).

¶27.    The case at bar differs from *Clemons*, because it is undisputed that Nolan was assaulted by Franklin. The crux of the case questioned whether Franklin assaulted Nolan with a deadly weapon. None of the statements concerned whether Franklin had possession of the bottle. Additionally, the statements do not create the perception that Nolan was being

11

kidnapped by Franklin. Rather, the statements explain the reason for the officers' belief that a dangerous and emergency situation existed inside Franklin's home.

¶28.    Therefore, Officer Ladnier's statements repeating what White had told him were not to prove that White was afraid Franklin would kill Nolan, that Franklin was holding Nolan by the hair, nor that Nolan had asked White for help. Consequently, we find these statements were not hearsay and therefore were admissible. Further, Officer Ladnier's statements were more probative in value than prejudicial and therefore were admissible under the Rule 403 balancing test.[1]

¶29.    Additionally, Franklin argues that the statements were used improperly to bolster the State's case and relies on *Bridgeforth v. State*, condemning trial courts for allowing statements obtained during the course of investigation. *Bridgeforth v. State*, 498 So. 2d 796, 800 (Miss. 1986). The State properly refutes this argument by noting that this Court based its finding of improper bolstering in *Bridgeforth* on ". . . the lack of direct evidence . . ." to support the case. *Id*. Comparatively, there is extensive direct evidence in the case *sub judice*; therefore, Franklin's claim of improper bolstering is without merit.

¶30.    Lastly, there is further support for the trial court's decision to allow the testimony of Officer Ladnier because White himself testified to the statements at trial. Franklin was given ample opportunity to cross-examine Officer Ladnier and White about the statements, which

---

[1] Mississippi Rule of Evidence 403 states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Miss. R. Evid. 403.

12

resulted in White claiming he had never made those statements. The State argues that, because White testified at trial, the jury was able to consider both testimonies and fulfill their duty ". . . to resolve the conflict in the testimony they hear. They may believe or disbelieve, accept or reject the utterances of any witness." *Groseclose v. State*, 440 So. 2d 297, 300 (Miss. 1983) (quoting *Gandy v. State*, 373 So. 2d 1042, 1045 (Miss. 1979) (citing *Shannon v. State*, 321 So. 2d 1 (Miss. 1975))). We agree. Therefore, we find no error in the trial court's admission of the testimony.

III. **Whether Franklin's right to a fair trial was violated by inflammatory statements in the prosecution's closing argument.**

¶31. When evaluating prosecutorial statements called into question because of their alleged impropriety, we must ask "whether the natural and probable effect of the improper argument of the prosecuting attorney is to create an unjust prejudice against the accused as to result in a decision influenced by the prejudice so created." *Dancer v. State*, 721 So. 2d 583, 589 (Miss. 1998) (quoting *Davis v. State*, 530 So. 2d 694, 701 (Miss. 1988)). Any supposed improper statements must be considered within context while also taking into account the facts surrounding the particular case. *Dancer*, 721 So. 2d at 589 (citing *Davis v. State*, 660 So. 2d 1228, 1248 (Miss. 1995) (citing *Ahmad v. State*, 603 So. 2d 843, 846 (Miss. 1992)).

¶32. First, Franklin contends that the prosecutor's statements during his closing argument exclaiming that Franklin's family was scared of him, that Franklin is aroused by beating women, and that he beat Nolan "because that's what he does," unfairly prejudiced his case because they appealed to the jury's passions and were not based on facts in the evidence.

13

Second, Franklin argues the prosecutor unfairly vilified him by calling him a "predator" and "dangerous," which also appealed to the jury's passions and prejudices.

¶33.     Franklin admits that "attorneys are allowed a wide latitude in arguing their cases to the jury.  However, prosecutors are not permitted to use tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury." *Sheppard v. State*, 777 So. 2d 659, 661 (¶7) (Miss. 2000) (quoting *Hiter v. State*, 660 So. 2d 961, 966 (Miss. 1995)).  Further, the jury's decision must be based on the evidence, thus any verdict based on "bias, passion, or prejudice" will be overturned.  *Sheppard*, 777 So. 2d at 662( ¶10) (citing *Fuselier v. State*, 468 So. 2d 45, 53 (Miss. 1985)).

¶34.    We must determine if the trial court, in overruling defense counsel's objections to the prosecutor's alleged improper statements, allowed error to stand; and if such error is found to stand, is that error reversible.  *Sheppard*, 777 So. 2d at 661-62 (citing *Williams v. State*, 445 So. 2d 798, 808-09 (Miss. 1984)).

¶35.    The defense relies on the reasoning in *Sheppard*, which in turn relies on *Williams*, but both are distinguishable from the present case.  In both *Williams* and *Sheppard,* the statements in controversy had no basis in the evidence and were clearly meant to prejudice the defense. *Williams* 445 So. 2d at 809; *Sheppard*, 777 So. 2d at 661.  *Williams* provided that error existed in the prosecutions' statements, because they allowed the jury to believe that they would be accountable to explain their decision after the trial concluded.  *Sheppard*, 777 So. 2d at 661 (citing *Williams*, 445 So. 2d at 808).  Similarly in *Sheppard*, the prosecution's statements were in error because they allowed the jury to believe that, unless

14

they convicted the defendant, ". . . the prosecutor was going to subject them to personal ridicule, embarrassment, and questioning." ***Sheppard***, 777 So. 2d at 662. Because the trial court sustained defense counsel's objections in ***Williams***, the error was deemed cured; whereas, the trial court in ***Sheppard*** overruled defense counsel's objections; thus a new trial was granted. ***Williams***, 445 So. 2d at 808-809; ***Sheppard***, 777 So. 2d at 662.

¶36.    Applied to the case at bar, the trial court did sustain an objection to one statement while overruling the objections to all other alleged improper statements. Regardless, the statements in this particular case were deduced and inferred from the evidence, unlike the statements in both ***Williams*** and ***Sheppard***. ***Franklin v. State***, 72 So. 3d 1129, 1144 (Miss. Ct. App.), *reh'g denied* (June 21, 2011), *cert. denied*, 71 So. 3d 1207 (Miss. 2011) (Prosecutors are permitted to comment on the facts presented in the evidence, and they are permitted to draw proper deductions and inferences from those facts.).

¶37.    Franklin argues that the prosecutor's statements were not based on the facts presented in the evidence or any inferences therefrom, citing ***Dancer v. State***, 721 So. 2d 583, 589 ¶31 (Miss. 1998) (citing ***Tubb v. State***, 217 Miss. 741, 744, 64 So. 2d 911 (1953)). Franklin fails to acknowledge that, while this Court in ***Dancer*** found the prosecution's remarks referencing the defendant going free in the jurors' neighborhoods to be improper, the statements did not constitute reversible error, because the jury could not have been influenced due to the overwhelming evidence of Dancer's guilt. ***Id.*** at 590.

¶38.    As the State correctly asserts, the case at bar is more similar to ***Harris v. State***, in which the prosecutor referred to the defendant as a savage animal, a predator, and a pervert,

and he apologized to the animal kingdom for calling the defendant a savage animal. *Harris v. State*, 537 So. 2d 1325, 1329 (Miss. 1989). In *Harris*, this Court stated that prosecutors should refrain from statements that are "unbecoming to dignified courts of justice" and should avoid personally abusing or vilifying defendants. *Id.* at 1330. This Court quoted *Bridgeforth v. State*, in which we previously stated that discipline for statements encompassing inflammatory remarks and vilification should be enforced by the trial judge. *Harris*, 537 So. 2d at 1330 (citing *Bridgeforth v. State*, 498 So. 2d 796, 801 (Miss. 1986)). And it is assumed that jurors follow the instructions of the trial court to disregard statements by counsel. *Harris*, 537 So. 2d at 1330 (citing *Shoemaker v. State*, 502 So. 2d 1193 (Miss. 1987)) (citations omitted.)

¶39. This Court, in *Harris*, found that, even had the trial court overruled defense counsel's objections and also neglected to inform the jury to disregard the comments, the substantial evidence presented to the jurors could not result in prejudice to the defendant based on the prosecution's statements. *Id.* at 1331. Comparing the case before us, the State argues that the jury also was provided with "ample incriminating evidence" that could not be prejudiced by the statements of the prosecutor. We agree.

¶40. At trial, the jury was provided with extensive evidence, including pictures of the victim's serious injuries, the victim's testimony, medical personnel testimony describing the victim's injuries, pictures of the inside of the home showing blood spatter on the walls and floors, officers' testimony explaining the severity of the situation, and testimony from the defendant's uncle and friend describing seeing Franklin and Nolan in an altercation and

16

being concerned that things might escalate. The evidence presented also included pictures of the alleged deadly weapon, which displayed marks of blood matching Nolan's blood type, and testimony that the defendant's DNA could not be excluded from the neck of the bottle.

¶41. Although we find that the statements by the prosecutor were not necessary and were inappropriate, the insurmountable evidence presented to the jury could not be prejudiced by these statements. *Id.* at 1330-31. Accordingly, any error left standing by the trial court does not require reversal. *Sheppard*, 777 So. 2d at 661-62 (citing *Williams*, 445 So. 2d at 808-09).

**IV.** **Whether the trial court erred in denying Franklin's motion to dismiss for violation of his right to a speedy trial.**

¶42. An analysis of Franklin's constitutional right to a speedy trial must be made apart from his statutory right. *Simmons v. State*, 678 So. 2d 683, 686 (Miss. 1996) (citing *Bailey v. State*, 463 So. 2d 1059, 1062 (Miss. 1985)).

**A. Constitutional Right to a Speedy Trial**

¶43. Franklin's assertion of a violation of his constitutional right to a speedy trial must be evaluated in accordance with the analysis established by *Barker v. Wingo*. Four factors must be considered and weighed: (1) the length of delay, (2) the reason for delay, (3) whether the defendant timely asserted his right, and (4) whether the defendant was prejudiced by the delay. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192, 33 L. Ed. 2d 101 (1972).

**1. The Length of Delay**

17

¶44. Franklin's right to a speedy trial attached at the moment of his arrest. *Simmons*, 678 So. 2d at 686 (citing *Smith v. State*, 550 So. 2d 406, 408 (Miss. 1989)). Because twenty-six months passed between Franklin's arrest and trial, the delay is presumptively prejudicial, and the burden of persuasion must shift to the State to show good reason for the delay. *Johnson v. State*, 68 So. 3d 1239, 1242 (¶7) (Miss. 2011) (citing *Jenkins v. State*, 947 So. 2d 270, 276-77 (Miss. 2006)). A delay of eight months or more triggers a presumption of prejudice that requires a full analysis under *Barker*. *Johnson*, 68 So. 3d at 1242 (¶6) (citing *Barker*, 407 U.S. at 533, 92 S. Ct. 2182); *Smith*, 550 So. 2d at 408. This Court in *Johnson* emphasized that ". . .when the delay is presumptively prejudicial, that does not mean that actual prejudice to the defendant exists. Rather, actual prejudice is determined at a different point in the *Barker* analysis." *Johnson*, 68 So. 3d at 1242. Therefore, as the dissent agrees, we must further examine the delay according to *Barker*, thus this factor weighs in favor of Franklin. *Barker*, 407 U.S. at 530.

### 2. The Reasons for Delay

¶45. The following sequence of events transpired, attributing to the delay:

a. November 8, 2009 – Arrest

b. December 15, 2009 – Indictment

c. January 26, 2010 – Arraignment (trial set for September 20, 2010)

d. August 6, 2010 – Franklin filed motion for continuance

e. September 16, 2010 – State filed motion for continuance

18

f.     March 24, 2011 – Judge's recusal

g.     April 4, 2011 – Case reassigned (trial set for June 6, 2011)

h.     May 26, 2011 – Agreed order of continuance moved for by defense (trial set for September 12, 2011)

i.     January 10, 2012 – Trial (moved to this date because of a crowded docket).

¶46.   Franklin filed for continuance on August 6, 2010, alleging that he had just been informed that the trial date would be September 7, 2010, rather than September 20, 2010, as was set at arraignment. Nothing from the record indicates the motion was granted or that the trial was actually moved from September 20 to September 7. A hearing was held regarding the State's subsequent motion for continuance, and both the motion and the hearing were based on the trial setting of September 20. Therefore, we will not count any time against Franklin for his August 6, 2010, motion for continuance. We will attribute the delay to the defense only from the June 6, 2011, trial setting to the September 12, 2011, trial setting.[2] *Vickery v. State*, 535 So. 2d 1371, 1375 (Miss. 1988) (continuances granted on behalf of the defense are deducted from the total number of days leading to trial).

¶47.   The State moved for continuance in September 2010 because its key witness and victim was recovering from a gunshot injury and could not be secured in time for trial. It is

---

[2] The motion for continuance set trial for September 12, 2011, but the subsequent order moving the trial date because of an overcrowded docket stated the trial date was being moved from August 8, 2011, to January 10, 2012. It is unclear from the record and among the parties why this discrepancy exists. Using the agreed order of continuance as guidance, we will use the September 12, 2011, trial setting.

also important to consider that, in early 2011, Judge Malcolm Harrison was succeeded by Judge William Gowan, which the State asserts contributed to a portion of the delay. Thereafter, Judge Gowan recused himself from the case.

¶48.    When analyzing the reasons for delay, the United States Supreme Court provided the following guidance:

> different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Murray v. State*, 967 So. 2d 1222, 1230 (Miss. 2007) (quoting *Barker*, 407 U.S. at 531). Accordingly, there is no indication of intentional delay by the State, and the length of delay caused by the absence of the State's key witness and victim should not be weighed against the State, because it is deemed a good-cause reason for delay under *Barker v. Wingo*. *Murray*, 967 So. 2d at 1230 (citing *Barker*, 407 U.S. at 531). Any delay caused by the succession of judges and the delay caused by an overcrowded docket should be weighed only slightly against the State. *Id*.

¶49.    We find the second factor weighs in favor of Franklin. However, the weight of this factor against the State should be slight, because a portion of the delay was based on a good reason, and there is no finding that the State acted intentionally in its delay. *Id* at 1231.

### 3.  Whether the defendant timely asserted his right.

¶50. Since the State must see that the defendant is brought to trial, it is never the responsibility of the defendant to bring himself to trial, and the defendant's assertion of his right to a speedy trial weighs in his favor. *Bailey v. State*, 78 So. 3d 308, 322 (Miss. 2012) (citing *Stevens v. State*, 808 So. 2d 908, 917 (Miss. 2002) (citing *State v. Magnusen*, 646 So. 2d 1275, 1283 (Miss. 1994))). But, "failure to assert the right will make it difficult for the defendant to prove that he was denied a speedy trial." *Bailey*, 78 So. 3d at 322 (citing *Barker*, 407 U.S. at 528).

¶51. Franklin contends that his right was first asserted on September 30, 2010, almost eleven months after his arrest. Further, he argues that, while his assertion may be untimely, fifteen months remained between the assertion and the trial, thus his speedy-trial right was still violated. However, Franklin also alleges he asserted his right through his motion to dismiss for failing to provide a speedy trial. This Court has established that asserting the right to a speedy trial and filing for dismissal for violating that same right are not one and the same. *Id.* at 323 (citing *Brengettcy v. State*, 794 So. 2d 987, 994 (Miss. 2001) (citing *Perry v. State*, 637 So. 2d 871, 875 (Miss. 1994)). The dissent finds this to be a distinction without a difference. We do not.

¶52. As the Fifth Circuit Court of Appeals has held, "an assertion that charges be dismissed for a speedy trial violation is not a value protected under *Barker*." *Cowart v. Hargett*, 16 F.3d 642, 647 (5th Cir. 1994)), *cert. denied*, 513 U.S. 886, 115 S. Ct. 227, 130 L. Ed. 2d 153 (1994). *Cowart* was a habeas corpus action, in which the United States District Court, Southern District of Mississippi, granted Llewyn Cowart's petition for habeas corpus relief

21

following this Court's denial of post-conviction relief. *Id*. at 644. There, as the dissent does here, the federal district court broadly construed the defendant's *pro se* motion to "squash" the indictment for speedy-trial violations, as a demand for a speedy trial. *Id*. at 647. The Fifth Circuit found that it was not an acceptable demand, and held that the **Barker** factor as to whether the defendant timely asserted his right to a speedy trial "is given 'strong evidentiary weight' in favor of the [S]tate." *Id*.

¶53. The Fifth Circuit expounded on **Cowart** in **U.S. v. Frye**, 489 F. 3d 201 (5th Cir. 2007). There, James Frye argued that a motion to dismiss should count as an assertion of speedy-trial rights. **Frye**, 489 F. 3d at 211. In support of his argument, Frye relied on **Strunk v. United States**, 412 U.S. 434, 440, 93 S. Ct. 2260, 37 L. Ed. 2d 56 (1973), in which the Supreme Court said, "In light of the policies which underlie the right to a speedy trial, dismissal must remain, as **Barker** noted, 'the only possible remedy.'" *Id*. The Fifth Circuit responded as follows:

> By focusing on the remedy, Frye loses sight of the right. The right, in this case, is the right to a speedy trial. An assertion of that right is a demand for a speedy trial, which will generally be an objection to a continuance or a motion asking to go to trial. At the very least, a defendant's assertion of his speedy trial rights should manifest "his desire to be tried promptly." **United States v. Litton Sys., Inc.**, 722 F.2d 264, 271 (5th Cir.1984). Frye's repeated motions for dismissal of the capital charge are not an assertion of the right, but are an assertion of the remedy. A motion for dismissal is not evidence that the defendant wants to be tried promptly. *See, e.g.*, **Barker**, 407 U.S. at 534-35, 92 S. Ct. 2182 ("More important than the absence of serious prejudice, is the fact that Barker did not want a speedy trial . . . . Instead the record strongly suggests that while he hoped to take advantage of the delay in which he had acquiesced, and thereby obtain a dismissal of the charges, he definitely did not want to be tried.").

22

***Id***. at 211-12.

¶54.   Here, the record contains four attempts by Franklin, filing *pro se*, seeking *dismissal* for not providing him with a speedy trial.  Franklin alleges in his own motion that he asserted his right to a speedy trial shortly after his arraignment, but as the trial court found, nothing in the record supports Franklin's assertion.  The dissent contends that Franklin did in fact demand a speedy trial, because in his March 2011 motion to dismiss, Franklin stated to the trial court that he had "demanded and or filed for a speedy trial and wants his wish granted." Clearly, though, the trial court interpreted Franklin's use of the word "wish" to mean a prayer for dismissal, because in its order denying Franklin's motion to dismiss, the trial court expressly found that "Franklin did not seek an instant trial, but solely moved for a dismissal." The record supports the trial court's finding.  The only filing pertaining to Franklin's speedy-trial rights, preceding the March 2011 motion, was one submitted *pro se* by Franklin on September 30, 2010, in which Franklin moved for a dismissal because 270 days had passed since his arraignment.  This was after Franklin's trial counsel filed, (as mentioned) on August 6, 2010, a motion for a continuance.  Thus, the record does not support that Franklin actually asserted his right to a speedy trial, because Franklin was demanding dismissal rather than demanding an actual trial.  ***Bailey***, 78 So. 3d at 323 (citing ***Brengettcy***, 794 So. 2d at 994 (citing ***Perry***, 637 So. 2d at 875)); *see also* ***McBride v. State***, 61 So. 3d 138, 144-45 (Miss. 2011) (defendant filing two *pro se* motions for directed verdict alleging speedy-trial violation did not assert his right, but rather, only requested dismissal); ***Bonds v. State***, 938 So. 2d 352, 357-58 (Miss. Ct. App. 2006) (relying on this Court's precedent, the defendant demanded

23

only two pretrial dismissals for violating his speedy-trial rights; therefore, no speedy-trial right was asserted).

¶55. Considering all of the facts: (1) Franklin filed his first *pro se* dismissal almost eleven months after being arrested; (2) defense counsel was granted a continuance after Franklin's third demand for dismissal; and (3) this Court's numerous rulings that motions to dismiss for violation of a speedy-trial right do not equate to an assertion of that right; we find this factor weighs slightly for the State. *Simmons v. State*, 678 So. 2d 683, 687 (Miss. 1996) (failing to file to dismiss until after one year slightly favored the State because the "primary" burden still remains upon the State); *see also* *DeLoach v. State*, 722 So. 2d 512, 518 (Miss. 1998) (filing to dismiss after one year and seven months weighed slightly in the State's favor).

### 4. Whether the defendant was prejudiced by the delay.

¶56. To determine whether Franklin was prejudiced by the delay, we must consider that the speedy-trial right is for: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern, and (3) limiting impairment of the defense. *Barker*, 407 U.S. at 532 (citations omitted).

¶57. Franklin argues that these three interests clearly weigh in his favor. With regard to the first two interests, Franklin argues that some anxiety is presumed, citing *Jasso v. State*, 655 So. 2d 30, 35 (Miss. 1995). He further asserts that he was inherently prejudiced to some extent since he was incarcerated, and such prejudice impaired his defense because he was unable take all the steps necessary to prepare for his defense. *Barker*, 407 U.S. at 533 ("If a defendant is locked up, he is hindered in his ability to gather evidence, contact witness, or

24

otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious.")

¶58. Other than listing these key arguments, Franklin does nothing to apply them to the facts of his own case. While it is undeniable that every defendant most likely experiences *some* anxiety from being incarcerated, Franklin makes no showing of how he was hindered in preparing his defense, and the record reveals no showing of "evidentiary or tactical disadvantage." *Jaco v. State*, 574 So. 2d 625, 633 (Miss. 1990) (From examining the trial itself, this Court found no showing that the defendant was subject to evidentiary or tactical disadvantage due to the delay).

¶59. Accordingly, the factors protecting pretrial oppressive incarceration and anxiety weigh neutrally. Without a record reflecting some disadvantage prejudicing Franklin's trial, or without Franklin pointing out how he was disadvantaged in preparing for trial, we cannot speculate based on generalizations of prejudice. *Ross v. State*, 605 So. 2d 17, 23 (Miss. 1992) (citing *U.S. v. Marion*, 404 U.S. 307, 325-26, 92 S. Ct. 455, 466, 30 L. Ed. 2d 468 (1971)).

¶60. Franklin lastly asserts that the delay resulted in the loss of a witness who would have testified to: (1) seeing Franklin and Nolan together, and (2) Nolan's willingness to go with Franklin that night. Franklin argues that the loss of the witness's testimony presents a colorable claim of prejudice. Delay can present ". . . loss of evidence, the unavailability of witnesses, or the erosion of a witness's memory." *Birkley v. State*, 750 So. 2d 1245, 1252 (Miss. 1999) (citing *Skaggs v. State*, 676 So. 2d 897, 901 (Miss. 1996)). These instances

25

present a strong showing that prejudice exists. *Birkley*, 750 So. 2d at 1252 (citing *Barker*, 407 U.S. at 532). As the State points out, the defense admitted that the witness could not be found. And no showing was made that this was due to any delay in bringing Franklin to trial. Moreover, the testimony of Anthony Singleton provided that he had seen Franklin and Nolan earlier in the evening, and, referring to Nolan, he stated, "she seemed happy." He also testified that everything appeared to be pleasant between Nolan and Franklin and that she never asked him to help her get away from Franklin.

¶61. The testimony provided by Singleton was that he had seen Franklin and Nolan together that night, and it demonstrated Nolan's willingness to go with Franklin. Consequently, the unavailability of the other witness to provide the same or similar testimony did not prejudice Franklin in his defense. *Id.* at 1253 (citing *Kolberg*, 704 So. 2d 1307, 1319 (Miss. 1997)).

¶62. Therefore, we find that none of the three interests of concern under the fourth factor weigh in Franklin's favor to the extent that he has presented a colorable claim of prejudice; thus this factor weighs in favor of the State.

¶63. In conclusion, weighing the *Barker* factors results in two factors favoring Franklin and two factors favoring the State. When viewing the totality of the circumstances, we conclude that the trial court did not err by denying Franklin's motion, because he failed to demand a speedy trial, and most importantly, he suffered no prejudice from the delay, nor was there any proof that the delay by the State was deliberate. *Bailey*, 78 So. 3d at 324.

**B. Statutory Right to a Speedy Trial**

26

¶64.    Mississippi ensures the right to a speedy trial statutorily through Mississippi Code Section 99-17-1, providing "Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned." Miss. Code Ann. § 99-17-1 (Rev. 2007).

¶65.    Franklin asserts that his statutory speedy-trial right was violated because 714 days passed between his arraignment and the trial date.  This Court established that, for a statutory speedy-trial violation to stand, the defendant must show that he was tried more than 270 days after his arraignment and demonstrate that the delay caused prejudice.  *McBride v. State*, 61 So. 3d 138, 147 (Miss. 2011) (citing *Guice v. State*, 952 So. 2d 129, 139-40 (Miss. 2007)).

¶66.    The State was granted a continuance in order to secure its key witness and victim, which is established as a good-cause reason for delay and should not count against the State. *Murray v. State*, 967 So. 2d 1222, 1230 (Miss. 2007) (quoting *Barker*, 407 U.S. at 531). Any delay thereafter caused by the succession of judges and an overcrowded docket should weigh only slightly against the State.  *Murray*, 967 So. 2d at 1230 (citing *Barker*, 407 U.S. at 531).

¶67.    Furthermore, as previously discussed, Franklin attempted to assert his right 237 days after his arraignment but failed to do so in accordance with this Court's ruling that a motion for dismissal for violation of a speedy-trial right is not the same as a motion demanding or requesting a speedy trial.  *Bailey*, 78 So. 3d at 323 (citing *Brengettcy v. State*, 794 So. 2d

27

987, 994 (Miss. 2001) (citing ***Perry v. State***, 637 So. 2d 871, 875 (Miss. 1994))). Therefore, Franklin failed to properly assert his right to a speedy trial.

¶68. Lastly, no support exists establishing that Franklin was prejudiced. The same testimony that would have been provided by the missing witness was presented by another witness, Anthony Singleton. And Franklin failed to show how pretrial incarceration prejudiced him other than stating general allegations. ***Ross***, 605 So. 2d at 23 (citing ***U.S. v. Marion***, 404 U.S. at 325-26, 92 S. Ct. at 466, 30 L. Ed. 2d 468).

¶69. Accordingly, we find that the State established good cause for its delay, and no prejudice was demonstrated as a result of the delay.

## CONCLUSION

¶70. This Court reverses Franklin's conviction of aggravated assault because the lesser-included-offense instruction of simple assault should have been submitted to the jury, and remands this case to the Hinds County Circuit Court for a new trial on aggravated assault consistent with this opinion. This Court affirms Franklin's conviction of kidnapping because we find no error based on the admission of Randolph White's statements or the denial of Franklin's motion to dismiss for violation of his right to a speedy trial, and Franklin's right to a fair trial was not violated by the prosecution's closing argument.

¶71. **COUNT III: CONVICTION OF KIDNAPPING AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT IV: CONVICTION OF AGGRAVATED ASSAULT, REVERSED AND REMANDED. APPELLANT IS TO BE GIVEN CREDIT FOR TIME SERVED.**

28

**WALLER, C.J., RANDOLPH, P.J., LAMAR, CHANDLER AND COLEMAN, JJ., CONCUR. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND KING, JJ.**

**DICKINSON, PRESIDING JUSTICE, DISSENTING:**

¶72. For the same reasons I stated in my dissent in *Johnson v. State*[3] – wherein I pointed out that the right to a speedy trial is dead and gone in the State of Mississippi – I dissent.

¶73. In recent years, this Court has eroded the United State Supreme Court's *Barker v. Wingo*[4] balancing-test analysis to the extreme. *Barker* requires courts considering a speedy-trial violation to analyze and *balance* four factors: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his right; and (4) whether the delay caused actual prejudice.[5] One can hardly call it balancing in Mississippi, where three of the four factors are on the defendant's side of the scale of justice, the fourth factor is slightly, if at all, on the State's side, and the State wins anyway.

*Length of delay*

¶74. The majority concedes that twenty-six is more than eight, and that, because an eight-month delay is presumptively prejudicial, and because the twenty-six-month delay between

---

[3] *Johnson v. State*, 68 So. 3d 1239, 1247 (Miss. 2011) (Dickinson, P. J., dissenting).

[4] *Barker v. Wingo*, 470 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

[5] *Id.* at 530.

29

Franklin's arrest and his trial is *more than three times* the number of months necessary to be presumptively prejudicial,[6] the first factor weighs in favor of Franklin.

*Reason for delay*

¶75. Both Franklin and the State contributed to the delay. But under the facts of this case, it certainly cannot be argued that Franklin was mostly at fault. And since the State has the ultimate burden of bringing Franklin to trial,[7] the reasons for the delay must weigh, even if only slightly, in favor of Franklin.

*Assertion of the Right*

¶76. Initially, the readers of this dissent should know that Franklin did, in fact, demand a speedy trial. In fact, he actually stated to the trial court that he "***demanded*** and or filed for a speedy trial and wants his wish granted." The majority discards this language for reasons it fails to disclose. One can assume the reason is because Franklin's motion is styled "Motion to Dismiss Charges For Failure To Provide A Fast And Speedy Trial." The majority fails to tell us why it abandons this Court's usual practice of ignoring titles and looking to the substance of pleadings.

¶77. This Court, in recent cases, draws an arbitrary, unexplainable distinction between a defendant's motion to dismiss for lack of a speedy trial and a defendant's motion demanding

---

[6] ***Perry v. State***, 637 So. 2d 871, 874 (Miss. 1994) (holding "an eight-month delay is presumptively prejudicial") (citing ***Smith v. State***, 550 So. 2d 406, 408 (Miss. 1989)).

[7] ***Vickery v. State***, 535 So. 2d 1371, 1377 (Miss. 1988) (holding "It is the burden of the State to see that a defendant receives a speedy trial.") (quoting ***Perry v. State***, 419 So. 2d 194, 199 (Miss. 1982)).

30

a speedy trial. According to the majority, only the latter weighs in the defendant's favor.[8]

To explain this distinction, the majority leans on a holding by the United States Court of Appeals for the Fifth Circuit, which explains that a motion to dismiss for a lack of a speedy trial is an assertion of the remedy for a speedy-trial violation – not an assertion of the right to a speedy trial.[9] I have two problems with this doctrinaire view.

¶78.    First, it escapes me how one can file a motion to dismiss a case for violating a right that the person does not claim to have. In essence, the majority takes the odd view that Franklin was saying to the trial court that he was entitled to a dismissal based upon a speedy-trial claim, but he was not saying he had a right to a speedy trial. The majority fails to inform us upon what basis Franklin argued he was entitled to dismissal, if it was asserting that he had a right to a speedy trial.

¶79.    Second, the majority fails to consider that many defendants – including Franklin in this case – file these motions *pro se*, and their lack of a legal education does not justify denying their constitutional rights, simply because they used phraseology that the majority finds unsuitable. I have seen many lawyers punished less for far more egregious errors in pleadings.

¶80.    Franklin filed ***not one, but four***, pro se motions seeking dismissal for lack of a speedy trial. In his motion to "dismiss," Franklin states that he "***demanded*** and or filed for a speedy

---

[8] ***Perry***, 637 So. 2d at 875; *see also* ***Adams v. State***, 583 So. 2d 165, 169-70 (Miss. 1991)).

[9] ***U.S. v. Frye***, 489 F.3d 201, 211-12 (5th Cir. 2007).

trial and wants his wish granted." When one "demands" a speedy trial, he generally is thought to be asserting a right to one. Can anyone doubt he was asserting his right to a speedy trial? And what about the trial court's response to the motions? A trial judge, faced with a motion to dismiss for failure to provide a speedy trial, could certainly be expected to know the defendant wants a speedy trial and, if not, grant the motion, or at least to go ahead and set the matter for trial.

¶81. During four cycles of motions to dismiss for the State's failure to provide a speedy trial, that certainly did not happen here. Under the majority's analysis, had Franklin changed the word "dismiss" to "demand," then three of the four *Barker* factors would weigh in Franklin's favor. I decline to seize on this meaningless distinction.

¶82. The delay in bringing Franklin to trial became presumptively prejudicial after eight months. Franklin filed his motion within the next ninety days. After he filed his motion, it was another fifteen months before he was finally brought to trial.

¶83. The presumption of prejudice does not occur until after eight months of pretrial incarceration.[10] So, under the majority's framework, a defendant who must wait eight months to become presumptively prejudiced, has waited too long if he lets another three months go by, never mind that it is the State that has the burden and duty to bring him to trial. I find this narrow, three-month window for a defendant to assert his right to a speedy

---

[10]*Perry*, 637 So. 2d at 874.

trial to be arbitrary, unfounded, and unexplainable. I would weigh this factor in favor of Franklin.

*Prejudice*

¶84.   The ***Barker*** court outlined three interests that the right to a speedy trial is meant to protect: (1) prevent oppressive pretrial incarceration; (2) minimize anxiety and concern of the accused; and (3) limit the possibility that the defense will be impaired.[11] The United States Supreme Court has held that minimizing oppressive pretrial incarceration and anxiety is exactly what the Sixth Amendment right to a speedy trial was designed to do:

> The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.[12]

¶85.   The majority, however, finds that because Franklin's pretrial anxiety did not hinder his defense–a completely separate factor for consideration–such anxiety weighs neutrally. Franklin was incarcerated for twenty-six months prior to his trial; he missed his farther's funeral; his wife divorced him; and he lost his home. Clearly, Franklin suffered an impairment of his liberty and a disruption in his life, resulting in substantial anxiety.

¶86.   More significantly, even though Franklin could not locate a witness, the majority speculates that his defense was not impaired. The majority reaches this dubious conclusion

---

[11] ***Barker***, 407 U.S. at 532.

[12] ***United States v. MacDonald***, 456 U.S. 1, 8; 102 S. Ct. 1497, 1502; 71 L. Ed. 2d 696 (1982).

by further speculating that the witness's testimony would have been similar to other testimony offered by defense witnesses.

¶87. Recently, this Court has held that "the possibility of impairment of the defense is the most serious consideration in determining whether the defendant has suffered prejudice as a result of the delay."[13] This Court will find prejudice to a defendant's defense where "there was a loss of evidence, the death of a witness, or the investigation became stale."[14]

¶88. So, not only was Franklin subject to twenty-six months of pretrial incarceration which unquestionably hampered his ability to defend himself, but also, because of the delay, he was unable to locate a witness who saw him and the victim on the night of the incident. At a hearing on the matter, testimony indicated that a favorable witness was no longer able to be located. This is precisely the situation in which this Court has held it would find actual prejudice to a defendant's case. But instead of finding actual prejudice, the majority finds a way to marginalize the value of the lost witness by speculating that his testimony would have been insignificant to the defense.

¶89. Because I find the loss of a witness is the most severe form of prejudice to a defendant's defense, I would weigh this factor in favor of Franklin, causing all four ***Barker*** factors to favor Franklin. Accordingly, I would find that his constitutional right to a speedy trial was violated.

---

[13] ***Johnson***, 68 So. 3d at 1245.

[14] ***Id.*** (citing ***State v. Magnusen***, 646 So. 2d 1275, 1285 (Miss. 1994)).

**KITCHENS AND KING, JJ., JOIN THIS OPINION.**