# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-00424-COA

**KYLE RESHAWN DODSON A/K/A KYLE DODSON A/K/A KYLE RASHAWN DODSON**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/28/2024 |
| TRIAL JUDGE: | HON. CELESTE EMBREY WILSON |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | MATTHEW BARTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/27/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., EMFINGER AND LASSITTER ST. PÉ, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1.     Following a jury trial, Kyle Dodson was convicted of attempted murder and conspiracy to commit motor vehicle theft. On appeal, he argues the trial court erred by refusing to give a jury instruction on aggravated assault as a lesser-included offense of attempted murder. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On March 22, 2023, Gabriel Crockett, Travion Hollomon, and Dodson met and planned to steal a car. Crockett would drive, Hollomon would steal the car, and Dodson would serve as the "lookout" and "protector" or "security." Crockett testified that Dodson

had a gun and was supposed to "[s]hoot at" "[a]nybody who tried to stop them from stealing the car." The men had "seen a car they liked" in Rasco Hills, a Southaven neighborhood, so they drove to Rasco Hills in another car Crockett had stolen previously.

¶3.    Around the same time (around 12:50 a.m.), dispatch alerted Detective Chase Pegrim of the Southaven Police Department that a stolen car (the one Crockett previously stole) had been seen in Rasco Hills. Pegrim was in an unmarked car. He spotted the stolen car and followed it as it turned into a "cove" in the neighborhood.

¶4.    Crockett drove to a house in the cove where the car they planned to steal was parked, and Hollomon and Dodson got out. As Hollomon attempted to steal the car, Crockett and Dodson saw Pegrim drive into the cove behind them and exit his car. Crockett did not know that Pegrim was a policeman and assumed that he was the homeowner. Crockett and Dodson warned Hollomon that someone else had arrived. Crockett then drove away in his car, and Hollomon fled on foot. Dodson started shooting at Pegrim.

¶5.    Pegrim had exited his unmarked car and was about to deploy two "stop sticks" (tire deflation devices) when Dodson started shooting at him. Pegrim heard four gunshots and turned around to see Dodson "continuing to fire" at him from a distance of about twenty-five yards. Pegrim could see the "muzzle flashes from [Dodson's] handgun and the actual gunshots" as Dodson advanced toward him. Pegrim drew his gun, returned fire, and began "looking for cover because [he] was in the middle of the road with no cover around [him]." Pegrim retreated and "fell" as he "was fleeing." Dodson continued to shoot at Pegrim, so Pegrim also "continued to shoot" until he had "fired [his] last round" (twenty-one rounds

2

total). Dodson finally stopped shooting and fled the scene. Crime scene investigators recovered fourteen shell casings that were attributed to the suspect's gun.[1]

¶6. Dodson, Crockett, and Hollomon were later arrested and indicted for conspiracy to commit murder, attempted murder, and conspiracy to commit motor vehicle theft. Crockett and Hollomon testified against Dodson at Dodson's trial. In addition, videos of the shooting captured by a neighbor's Ring home surveillance camera were admitted into evidence and played at trial.[2]

¶7. At the jury instruction conference, Dodson requested an instruction on aggravated assault as a lesser-included offense of attempted murder, but the State objected. The trial court refused the instruction, citing *Thomas v. State*, 249 So. 3d 331 (Miss. 2018), and stating that aggravated assault was not a lesser-included offense of attempted murder.

¶8. The jury found Dodson guilty of attempted murder and conspiracy to commit motor vehicle theft but acquitted him of conspiracy to commit murder. Following a separate sentencing hearing, the jury was unable to agree on a sentence for attempted murder.[3] The court then sentenced Dodson to thirty-eight years' imprisonment for attempted murder and

---

[1] Investigators recovered a stolen 9mm gun at the crime scene, which they believed to be the gun the suspect used.

[2] The videos were actually videos taken of the Ring video as it played on the neighbor's television. It is difficult to determine anything of significance from the video given the nighttime darkness, the distance between the Ring camera and the shooter, and the quality of the video.

[3] *See* Miss. Code Ann. § 97-1-7(2) (Rev. 2020) (providing that the punishment for attempted murder "shall be . . . life in the custody of the Department of Corrections if the punishment is so fixed by the jury in its verdict after a separate sentencing proceeding").

a consecutive term of one day to serve in custody followed by four years and 364 days of post-release supervision for conspiracy to commit motor vehicle theft.

## ANALYSIS

¶9.     On appeal, Dodson argues that "aggravated assault is a lesser-included-offense of attempted murder" and that the trial court erred by refusing his request for a jury instruction on aggravated assault.  In response, the State notes that the Mississippi Supreme Court has held that aggravated assault is not a lesser-included offense of *murder*, *Thomas*, 249 So. 3d at 346 (¶51), but the State acknowledges that neither the Supreme Court nor this Court has directly addressed the question whether aggravated assault is a lesser-included offense of *attempted* murder.  *See Phinizee v. State*, 422 So. 3d 1, 12 (¶40) (Miss. Ct. App. 2025), *cert. denied*, 421 So. 3d 1259 (Miss. 2025).  Regardless, the State argues that Dodson was not entitled to a jury instruction on aggravated assault because there was no factual basis for such an instruction.

¶10.    We review a trial court's refusal of a lesser-included-offense instruction de novo.  *Id.* at (¶42).  "A defendant has a right to a lesser-included-offense instruction if there is some evidence from which a reasonable juror could find him *both* not guilty of the indicted offense *and* guilty of the lesser-included offense."  *Curtis v. State*, 298 So. 3d 446, 451 (¶11) (Miss. Ct. App. 2020) (citing *Gilmore v. State*, 119 So. 3d 278, 286 (¶13) (Miss. 2013)).  But "lesser-included-offense instructions should not be indiscriminately granted; instead, the jury should not be presented with a lesser-included-offense instruction unless the record provides an evidentiary basis for the instruction."  *Franklin v. State*, 136 So. 3d 1021, 1026 (¶11)

4

(Miss. 2014) (quotation marks omitted). "Additionally, lesser-included-offense instructions should not be granted on mere speculation." *Id.*

¶11.    As in *Phinizee*, "even if we assume for the sake of argument that aggravated assault is a lesser-included offense" of attempted murder, we conclude that Dodson was not entitled to a lesser-included offense instruction because "there was no factual basis for such an instruction in this case." *Phinizee*, 422 So. 3d at 12 (¶41).  To find Dodson guilty of attempted murder, the jury was required to find that he attempted to shoot Pegrim and acted with the deliberate design to effect Pegrim's death.  *See* Miss. Code Ann. § 97-1-7(2); Miss. Code Ann. § 97-3-19(1)(a) (Rev. 2020).  Consistent with the jury instruction he requested at trial, Dodson argues that the jury could have found him *not guilty* of attempted murder and yet *guilty* of aggravated assault by finding that he attempted to shoot Pegrim but in doing so only attempted to cause Pegrim bodily injury.  *See* Miss. Code Ann. § 97-3-7(2)(a)(ii) (Rev. 2020) ("A person is guilty of aggravated assault if he or she . . . attempts to cause . . . bodily injury to another with a deadly weapon . . . .").

¶12.    However, we conclude that there was no evidentiary basis for a rational jury to find Dodson not guilty of attempted murder and yet guilty of aggravated assault.  At trial, Dodson's theory of defense was that the State simply had not proven beyond a reasonable doubt that he was the shooter or that he was even present at the shooting.  Defense counsel argued that no physical evidence placed Dodson at the scene of the crime and that the only evidence connecting him to the crime was the self-serving testimony of Crockett and Hollomon.  Counsel noted that Crockett and Hollomon had falsely implicated other persons

in the crime and that Crockett had a child with Hollomon's sister. Defense counsel also emphasized that although the gun presumably used by the shooter was found at the crime scene, the State failed to connect that gun to Dodson, and Dodson's fingerprints were not on the gun. On this evidence, a rational jury could have found that the State failed to prove beyond a reasonable doubt that Dodson was the shooter or even present at the crime. However, that evidence would have supported an outright acquittal—not a conviction for aggravated assault.

¶13. Defense counsel also argued that the location of the shooter's shell casings and the shooter's apparent direction of movement on the Ring video indicated that the shooter was simply firing as he retreated—and was not advancing toward or intending to kill Pegrim. Although not explicitly stated, the suggestion seemed to be that the shooter fired his weapon only to create an opportunity to escape and did not attempt to shoot at Pegrim at all. Perhaps a jury could have reached that conclusion. However, we do not see how that would support an acquittal for attempted murder *and a conviction for aggravated assault*. To reach that result, a jury would have to find that Dodson was the shooter, *that Dodson intended to shoot Pegrim by firing at least fourteen shots at him*, *and that Dodson intended the gunshots to cause some bodily injury to Pegrim*, *see* Miss. Code Ann. § 97-3-7(2)(a)(ii), but at the same time conclude that Dodson did not intend to kill Pegrim. There was no evidentiary basis for the jury to reach such a strange conclusion regarding Dodson's intent. "Rather, . . . 'such a conclusion would require speculation unsupported by any evidence presented by the State or by the defense.'" *Phinizee*, 422 So. 3d at 13 (¶45) (brackets omitted) (quoting *Curtis*, 298

6

So. 3d at 452 (¶14)). As discussed above, "lesser-included-offense instructions should *not* be granted on mere speculation." *Id.* (quoting *Franklin*, 136 So. 3d at 1026 (¶11)). Therefore, the trial court did not err by refusing Dodson's request for an aggravated assault jury instruction.

¶14. Dodson's convictions and sentences are **AFFIRMED**.

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**