ROBINSON *v.* STATE

No. 40938 October 27, 1958 105 So. 2d 766

*John G. Gee, Vance W. Good,* Vicksburg, for appellant.

*J. R. Griffin,* Asst. Atty. Gen., Jackson, for appellee.

ROBERDS, P. J.

Robinson, the appellant, was convicted of the murder of Ernest Jackson, and sentenced to the state penitentiary for life.

He urges on this appeal that the verdict was against the great weight of the testimony, and, for that reason, we should either acquit Robinson or reverse the case for trial by another jury.

 ██ No motion was made for a new trial. Many years ago this Court adopted the rule that the contention that the verdict is contrary to the great weight of the evidence is not properly preserved for review by this Court on appeal where no motion for a new trial raising the point was filed with and presented to the trial court. The cases announcing this rule are collected in Clark v. State, 206 Miss. 701, 39 So. 2d, 783, suggestion of error overruled 40 So. 2d 591. See also Gilmer v. State,

(Miss.) 46 So. 2d 447. However, in view of the gravity of the charge and the severity of the punishment in this case, we have reviewed the testimony, and, in our opinion, the verdict was amply justified by the testimony. We perceive no merit in the contention.

 Robinson requested but was refused the following instruction: "The court instructs the jury for the defendant that you cannot try this defendant in the light of after developed facts, nor shall you hold him to the same calm, cool, clear, collected and precise judgment which you are now able to exercise, but that you should, as nearly as you can, in the place and circumstances at the time of the shooting and judge whether or not in shooting the deceased, the defendant here Charlie Robertson acted as a reasonably prudent person would have acted under similar circumstances, and if you find that he did, it is your sworn duty to find him not guilty." Appellant contends the refusal to grant that instruction is reversible error. There are two reasons why the contention is not well taken. The first reason is the instruction is not properly drawn. Presumably, it meant to tell the jurors to place themselves in the position of the accused and judge his acts and conduct from that position. However, it failed to so instruct the jury. The instruction says, "* * * but that you should, as nearly as you can, in the place and circumstances at the time of the shooting * * *". As drafted, the instruction would have confused the jurors. No doubt this was an omission, or a technical error, on the part of the draftsman of the instruction, but the question must be considered from the standpoint of its effect upon the jurors.

 The second reason the refusal to grant the instruction is not reversible error is that, while the instruction properly might have been given, (*Mississippi Jury Instructions,* Alexander, Vol. I, No. 154, page 75), we are unable to see how appellant was prejudiced by refusal to grant it. The error, to be grounds for reversal, must

be prejudicial to the accused. Alexander, supra, No. 223, page 88. Robinson shot Jackson twice with a pistol, from which shots Jackson shortly died. ▉▉ ▉ Robinson's defense was that Jackson was advancing on him in a threatening manner with an open knife in his hand, and Robinson had reason to believe, and he did believe, he was in immediate danger of losing his life or suffering great bodily harm at the hands of Jackson. The State denied that Jackson had a knife in his possession or that he was advancing on Robinson in a threatening manner. That was the case. Robinson testified Jackson did have the knife. The testimony on behalf of the state was to the effect Jackson did not have a knife. Under that state of circumstances Robinson obtained eleven instructions. They were prepared with unusual care— drawn in clear, concise language. They fully informed the jurors of the rights of the accused and the duty and burden of the State. We will quote from them enough to substantiate the foregoing statement. One told the jury that a person assaulted has the right to defend himself; repel force with force; has the right to act on appearances, "* * *and if you believe from the evidence in this case that at the time he fired his pistol, or immediately before that, Ernest Jackson was attempting to do him some great bodily harm, then the defendant is not guilty, and it is your sworn duty to acquit him."

Another instruction informed the jury that the indictment is no evidence against accused; that the burden to prove accused guilty beyond a reasonable doubt is upon the State at all stages of the trial. Another instruction told the jurors that if they were in doubt as to what the true facts were or as to what happened, they should find defendant not guilty. Another instruction, among other things, charged the jury "* * * it is further the duty of the jury to acquit the defendant although the jury should further believe from the evidence Robinson was in no actual danger of such injury, if he was in apparent

danger of it." In describing the overt act which would justify Robinson in taking the life of Jackson one instruction used this language: "No exact definition of what constitutes an overt act can be given. It may be a motion, a gesture, conduct or demonstration, or anything else, even in the gleam of an eye, which evidences reasonably a present design to do unto the defendant some great bodily harm. Trifles light as air when viewed alone may become fraught with deadly meaning when viewed in connection with all of the preceding facts disclosed, and with all of the evidence in the case."

And, as bearing upon the idea the jurors should view the situation from circumstances confronting accused, one instruction informed the jurors the danger need not be real—that defendant had the right to act on appearances, and then said, "and in such case if the accused acted from hurried consideration by reasonable belief from the state of things, he will not be held criminally responsible for a mistake as to the extent of the actual danger; and if the jury believe from the evidence that at the time of the shooting in this case the conduct of the deceased was such as to excite in the mind of a reasonably prudent person the belief that the deceased had the means available and the purpose then in his mind then to carry into effect his threats, if any, to do this defendant some great bodily harm, then the accused was justified in anticipating an attack if it was present, urgent, and unavoidable, except by flight, and to protect his own life and limb by shooting or taking the life of the deceased Ernest Jackson."

We deem it unnecessary to quote further from the instructions granted Robinson. It is sufficient to say that they told the jurors, at least impliedly, that they should place themselves in the position of Robinson at the time of the shooting and judge his acts under the circumstances apparent to him as a reasonable man. All of the granted instructions both to the State and

accused are to be read and considered together. Alexander, supra, No. 224, page 90.

Affirmed.

*Hall, Lee, Holmes,* and *Ethridge, JJ.,* concur.