241 So.2d 668 (1970)
William Thomas PITTS
v.
STATE of Mississippi.
No. 46037.
Supreme Court of Mississippi.
December 7, 1970.
Lawrence D. Arrington, Hattiesburg, for appellant.
A.F. Summer, Atty. Gen., by Guy N. Rogers, Asst. Atty. Gen., and John M. Kinard, Sp. Asst. Atty. Gen., Jackson, for appellee.
*669 ROBERTSON, Justice.
Appellant, William Thomas Pitts, was indicted, tried and convicted of murder in the Circuit Court of the First Judicial District of Jones County, Mississippi. The jury in its verdict fixed his punishment at life in the State penitentiary, and the judgment of the court embodied this sentence.
On the morning of August 17, 1969, appellant visited the homes of several of his relatives and it would appear had a drink at each home. That afternoon he picked up his favorite first cousin, Jimmy Pitts, in Ellisville, and, as was their custom, they rode around, visited relatives, and continued to drink. They thus consumed a considerable amount of intoxicating liquor during the afternoon. According to all the witnesses, appellant was drinking heavily and several witnesses, including some for the state, testified that appellant was drunk.
Between 8:00 and 8:30 P.M., after Hurricane Camille had begun to move into the Jones County area, appellant and Jimmy Pitts, who was driving appellant's 1965 red Chevrolet, were found in a ditch near Pitts Grocery Store on State Highway 588. The State's witness, James Thompson, testified that he pulled appellant's car out of the ditch and assisted Jimmy Pitts in getting appellant back on the front seat of the car. In Thompson's opinion, appellant was drunk at that time. Jimmy Pitts continued as the driver of appellant's car.
About 9:00 P.M. the body of Jimmy Pitts was found lying in the center of Highway 588 at a point approximately five miles west of Ellisville. Appellant's automobile was located in a ditch about 225 feet east of the body, and appellant apparently drunk was leaning against the trunk of the car. Examination of the body revealed that Jimmy Pitts had been shot with a small caliber pistol, the bullet entering on the right side of the chest and exiting on the left side. Tire tracks began within 15 feet of the body and led to appellant's red Chevrolet, the rear of which was in the ditch.
Although some witnesses who talked to the appellant at the scene testified that he made some rather confusing statements about what happened, appellant testified that he remembered nothing from about 5:00 o'clock that afternoon until 11:00 that night, when he was placed in the Jones County jail by Deputy Sheriff Brownlee.
*670 On August 19th, two days after the killing, a Star 22-caliber automatic pistol was found underneath a barbed wire fence about 12 feet from appellant's car. The barrel was pointed upward, there was water in it, and it was wet and rusty from the rain. All fingerprints had been washed off. The hammer was down. A cartridge hull was found by Highway Patrolman Hooks on the floor on the driver's side of the appellant's car; he also found a spent and mutilated bullet under the seat on the driver's side. The paneling on the driver's side bore an indentation made by the bullet. The cartridge hull was identified as having been fired by the pistol found near the appellant's automobile. Because of the mutilated condition of the bullet, it was impossible to definitely identify it as having been fired from the pistol found near the car. However, it did have fibers on it identical with those of the deceased's shirt, and it had paint particles identical with the paint on the door paneling. Donald Ates testified that he made tests that demonstrated that the barrel of the pistol was against deceased's shirt when the fatal shot was fired. Appellant admitted that he owned a 22-caliber pistol, that he and Jimmy Pitts had fired the pistol that afternoon, but that he had lost the pistol. He stated that the pistol found near his car looked like his, but the barrel was about a half inch longer than the barrel on his pistol. One witness testified that he had seen the pistol in the middle of the front seat of appellant's car earlier that afternoon.
It was from this circumstantial evidence that the jury found that William Thomas Pitts had wilfully, unlawfully, feloniously and of his malice aforethought, killed and murdered Jimmy Pitts.
This Court said in Westbrook v. State, 202 Miss. 426, 32 So.2d 251 (1947):
"[T]hat when in any essential respect the state relies on circumstantial evidence, it must be such as to exclude every other reasonable hypothesis than that the contention of the state is true, and that throughout the burden of proof is on the state." 202 Miss. at 433, 32 So.2d at 252. (Emphasis added.)
An essential element of the crime of murder is the felonious and premeditated intent to kill. The evidence as to the felonious intent of the appellant was wholly circumstantial.
In Love v. State, 208 So.2d 755 (Miss. 1968) the defendant was indicted for grand larceny and found guilty by the jury of petit larceny. In that case also the only evidence of felonious intent was circumstantial. Westbrook v. State was cited in Love as the authority for the statement that:
"The proper burden of proof, when evidence is wholly circumstantial as to an essential element of the offense, is that such evidence must exclude every reasonable hypothesis other than that of guilt." 208 So.2d at 757.
We think that the trial court was in error in refusing to grant appellant's instruction that the evidence must exclude every reasonable hypothesis other than that of guilt.
The State was granted the following instruction:
"The Court instructs the Jury for the State of Mississippi that you do not have to know that the defendant is guilty in order to be perfectly warranted in convicting him; and that under the law, all that is necessary for you to convict him is for you to believe from the evidence beyond a reasonable doubt that he is guilty."
We have repeatedly condemned the use of this instruction. Pieratt v. State, 235 So.2d 923 (Miss. 1970); McGill v. State, 235 So.2d 451 (Miss. 1970); Carroll v. State, 215 So.2d 871 (Miss. 1968).
Finally, in Pryor v. State, 239 So.2d 911 (Miss. 1970), we held that the granting *671 of this instruction was fatal and required a reversal of the case. That case, just like this case, was one where the evidence was largely circumstantial. Such an instruction in a circumstantial evidence case is especially unfair to the defendant and when granted constitutes fatal error.
The judgment of the trial court is reversed and this cause remanded for a new trial.
Reversed and remanded.
ETHRIDGE, C.J., and RODGERS, BRADY and INZER, JJ., concur.