# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-00169-COA

**LAVAR WILLIAMS A/K/A LAVAR D. WILLIAMS A/K/A LEVAR DAUNTE' WILLIAMS A/K/A LAVAR DONTA WILLIAMS A/K/A BOO LOVE**

APPELLANT

v.

**STATE OF MISSISSIPPI**

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 11/29/2018 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CYNTHIA ANN STEWART |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | JOHN K. BRAMLETT JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/04/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GREENLEE, J., FOR THE COURT:**

¶1.     Police, executing a controlled delivery, arrested Dexter Smith at a Canton residence after a package containing approximately 1.8 kilograms of marijuana was delivered to the address. Smith, who later identified Lavar Williams as the homeowner, explained Williams had paid him to take possession of the package when delivered. A search of the residence resulted in officers confiscating cocaine, additional marijuana, and a weapon. Williams was indicted for possession of cocaine with intent to sell, conspiracy to sell cocaine, possession of marijuana with intent to sell, conspiracy to sell marijuana, and possession of a firearm by

a convicted felon.

¶2.    A Madison County jury found Williams guilty of possession of schedule I and II controlled substances with intent to sell; conspiracy to sell a schedule I controlled substance; and possession of a firearm by a felon.[1] Williams was adjudicated as a non-violent habitual offender[2] and a subsequent drug offender.[3] Upon application of the subsequent drug offender recidivist statute, his sentence for possession of cocaine with intent to sell was enhanced to sixty years in the custody of the Mississippi Department of Corrections (MDOC). Williams' sentence for possession of marijuana with intent to sell was enhanced to eighty years in MDOC's custody.

¶3.    Pursuant to Mississippi Code Annotated section 99-19-81, Williams was found to be a non-violent habitual offender due to his prior conviction for possession of marijuana. He received the maximum ten-year sentence for possession of a firearm by a felon and the maximum five-year sentence for his conspiracy to sell marijuana conviction.

¶4.    On appeal, Williams claims that (1) his sentences are grossly excessive and disproportionate to the crimes, (2) the circuit court erred by excluding Michael Brown's affidavit, (3) the State of Mississippi violated the Fourteenth Amendment's Equal Protection

---

[1] The indictment charging Williams with possession of and conspiracy to sell cocaine and marijuana references cocaine as a schedule II controlled substance and marijuana as a schedule I controlled substance.

[2] *See* Miss. Code Ann. § 99-19-81 (Rev. 2015).

[3] *See* Miss. Code Ann. § 41-29-147 (Rev. 2009).

Clause, (4) the court erred by admitting Smith's statement to Lieutenant Steed into evidence, and (5) the court erred by refusing jury instruction D-7. Finding no reversible error, we affirm Williams' convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

¶5.     On July 7, 2017, Lieutenant Ed Steed, a K-9 interdiction officer with the Ridgeland Police Department and a member of a Mississippi Bureau of Narcotics task force, was notified of a suspicious package received at a FedEx facility. The package had been sent from Richmond, California, by James Collins to Shamaya Collins at 524 East North Street, Canton, Mississippi.

¶6.     Lieutenant Steed testified that California is a "known source state" for multiple types of narcotics. Upon recognizing that the package was sent from a known source state, Lieutenant Steed checked the information on the package's label in a database used by law enforcement to see if it matched. All listed names, addresses, and phone numbers were false.

¶7.     Upon accessing the package, Lieutenant Steed's K-9 dog alerted to the presence of narcotics. A search warrant was obtained, and the package was opened. The package contained two large vacuum-sealed bundles containing marijuana.[4] Lieutenant Steed contacted Captain Robert Hooker with the Mississippi Bureau of Narcotics, who proceeded

---

[4] Eric Frazure, an employee with the Mississippi Forensics Laboratory, testified that the vacuum-sealed bundles found in the confiscated package delivered to Williams' address during the July 7, 2017 controlled delivery contained approximately 1.8 kilograms or 3.9 pounds of marijuana.

3

to set up a controlled delivery at the intended address for later that day. Prior to the controlled delivery, Agent Jeff Pitts surveilled the Canton home. As a part of his surveillance, Pitts took pictures, documented his observations, and identified the tag of an Audi parked in the driveway. The vehicle's tag identified Lavar Williams as its owner.

¶8.    Later that day, Agent Pitts, posing as a FedEx delivery carrier, delivered the package to the Canton address. The package was received by Dexter Smith, who was weed-eating the front yard at the time of delivery. Smith carried the package into the carport. At that moment, undercover law enforcement officers moved in and took Smith into custody. As Lieutenant Steed was arresting Smith, Smith told Lieutenant Steed that he was at the residence to weed-eat and that the homeowner told him that FedEx would deliver a package that morning.

¶9.    Officers secured the house and obtained a search warrant for the residence. A search produced a Home Depot bucket under the kitchen table with cocaine and marijuana inside. More marijuana and digital scales were located in the storage room attached to the carport. Based on another package label, the marijuana found inside the storage room had also been shipped from the same California address two weeks earlier.

¶10.    Along with the drugs, officers found an AR-15 assault rifle with the serial numbers filed off.  Personal items were found in the home, including mail, a wallet, medication, a birth certificate, and some clothing identified as belonging to Williams. The database used by Lieutenant Steed to verify the names and addresses on the package showed that Williams owned the home. Agent Stephen Coleman provided Smith with a photo lineup, and he

4

identified Williams as the homeowner.

¶11.    On July 12, 2017, prior to Williams' arrest, Smith executed an affidavit claiming that the AR-15 confiscated during the search was his and not Williams'.  However, at trial, Smith further explained that Williams drove up to him as he was walking to the store and told him to get in the car. Smith stated that he did not know where Williams was taking him but confirmed it was somewhere in Jackson. It was during that trip that Williams and Michael Brown executed affidavits. Kevin Massey, a law clerk at the time of trial, testified that Williams brought Smith and a Michael Brown into the firm's office to execute affidavits. He explained that one of the men wanted to take credit for the marijuana and the other for the gun. Smith claimed that the gun found was his, and Brown's affidavit stated that the marijuana found in the home belonged to him. Smith, however, testified that he did not know what the document was he signed, and that since he could not read, he did not know what the form stated and that he could only write his name. Smith recanted the affidavit's statement, stating that he was scared. Also, Williams had threatened to kill his family if he testified. Brown did not testify at trial. Defense counsel explained to the court that they had tried several times to serve a subpoena on Brown, but they were unsuccessful in locating him. The circuit judge excluded Brown's affidavit because it lacked corroborating circumstances that could clearly indicate its trustworthiness.

¶12.    After considering the evidence presented at trial, a Madison County jury returned a

verdict of guilty on Counts I, III, IV, and V.[5] On November 26, 2018, the circuit court sentenced Williams to sixty years as a subsequent drug offender and non-violent habitual offender for Count I, eighty years as a subsequent drug offender and non-violent habitual offender for Count III, five years as a non-violent habitual offender for Count IV, and ten years as a non-violent habitual offender for Count V. The court instructed that Count III's sentence run concurrently to Count I's sentence and that Count IV run concurrently to the sentences imposed in Counts I and III. The court further ordered that Count V's sentence run consecutively to any and all other sentences. The circuit court also denied Williams' motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial.

¶13. On appeal, Williams claims that (1) his sentences are grossly excessive and disproportionate to the crimes, (2) the circuit court erred by excluding Michael Brown's affidavit, (3) the State of Mississippi violated the Fourteenth Amendment's Equal Protection Clause, (4) the court erred by admitting Smith's statement to Lieutenant Steed into evidence, and (5) the court erred by refusing jury instruction D-7. Finding no reversible error, we affirm Williams' convictions and sentences.

**DISCUSSION**

I. **Whether Williams' sentence violated the Eighth Amendment's prohibition against cruel and unusual punishment.**

¶14. Generally, as long as a sentence does not exceed the maximum term allowed by

---

[5] The record suggests that Count II was dismissed during the hearing on Williams' renewed motion for a directed verdict. Specifically, the court stated, "So Count [II] is gone."

statute, this Court will not disturb the sentence on appeal. *Nash v. State*, 293 So. 3d 265, 268 (¶11) (Miss. 2020) (citing *Fleming v. State*, 604 So. 2d 280, 302 (Miss. 1992)). However, where it is alleged that a sentence is grossly disproportionate to the crime charged, the sentence may be attacked on the basis that it violates the Eighth Amendment's restriction on cruel and unusual punishment. *Wallace v. State*, 607 So. 2d 1184, 1188 (Miss. 1992); *Fleming*, 604 So. 2d at 302.

¶15.    Williams argues that his maximum enhanced sentences violate the Eighth Amendment because they are excessive and grossly disproportionate to his crimes. U.S. Const. amend. VIII. In support of his argument, Williams relies heavily on multiple cases applying the United States Supreme Court's proportionality test in *Solem v. Helm*, 463 U.S. 277 (1983).

¶16.    Under *Solem*, the three factors considered when conducting a proportionality review are: (1) "the gravity of the offense and the harshness of the penalty"; (2) comparison of the sentence with "sentences imposed on other criminals in the same jurisdiction"; and (3) comparison of sentences imposed in other jurisdictions for commission of the same crime with the sentence imposed. *Id*. at 292.

¶17.    However, Williams fails to acknowledge the supreme court's opinion in *Harmelin v. Michigan*, 501 U.S. 957 (1991). Recent precedent confirms that *Solem* must now be viewed in accord with the precedent set by *Harmelin. Nash*, 293 So. 3d at 269 (¶13) (citing *McGruder v. Puckett*, 954 F. 2d 313, 315 (5th Cir. 1992)).

¶18.    *Harmelin* identifies the narrow proportionality principle contained in the Eighth

Amendment, which "does not require strict proportionality between a crime and sentence but rather forbids only extreme sentences that are grossly disproportionate to the crime." *Id.* (internal quotation marks omitted) (quoting *Graham v. Florida*, 560 U.S. 48, 59-60 (2010)). Whether a particular sentence is grossly disproportionate turns first on the court's comparison of the crime's seriousness and the sentence's severity. *Id*. Cases in which this initial comparison results in a determination of gross disproportionality are exceedingly rare. *Id*. It is only in those exceptionally scarce cases that the court should "then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with sentences imposed for the same crime in other jurisdictions." *Id*. (quoting *Graham*, 560 U.S. at 60).

¶19.    To support his gross disproportionality argument, Williams relies on *Davis v. State*, 724 So. 2d 342, 344 (¶8) (Miss. 1998). In *Davis*, the defendant was convicted for selling .02 grams of cocaine within 1,500 feet of a church. *Id*. Since the sale of a controlled substance within a certain distance of a church carries a sentence enhancement, the circuit court imposed the maximum sentence available, sixty years. *Id*. On appeal, the *Davis* court noted that (1) the sentence did not exceed the maximum term allowed by statute, (2) the sentence was the equivalent to a life sentence without parole, and (3) the record was devoid of any justification for applying the maximum sentence available. *Id*. at (¶¶8, 10) Determining that the circuit court "did not use [its] discretion [] and simply opted for the maximum penalty," the court remanded the sixty-year sentence for a proportionality review under *Solem*. *Ford*

8

*v. State*, 975 So. 2d 859, 870 (¶41) (Miss. 2008) (citing *Davis*, 724 So. 2d at 344 (¶10)).

¶20.    Arguing that his case is analogous to *Davis*, Williams claims that the circuit court abused its discretion by applying the subsequent drug offender enhancement and failing to articulate, on the record, its reasoning for sentencing him to the maximum period allowed by law.

¶21.    This assertion is unfounded. Unlike Williams, Davis was a first-time offender[6] sentenced to the maximum penalty without any apparent reasoning. *Davis*, 724 So. 2d at 344 (¶9); *Ford*, 975 So. 2d at 870 (¶41). Here, a review of the record shows that the circuit court was conscious of its discretionary power. The court noted its "option of sentencing the defendant to the [sixty] years day for day . . ." for Count I, and again in regard to Count II, "for the same reasons, the sentencing range of [ten] to [forty] years would be doubled to [eighty] years." From there, the circuit court explained its rationale prior to imposing the maximum sentence. Specifically, the circuit court stated:

> Well, you know, I've always felt that sentences need to be served consecutive[ly] for separate crimes. In this matter[,] it may seem to be a bit of overkill. So in relation to Count [I] and Count [III], I'm going to order that those be served concurrently. . . . I believe the defendant should be sentenced to the maximum under both counts without eligibility for early release or parole, which means I'm going to ultimately sentence him to [eighty] years under Count [III]. And I could sentence him to another [sixty] years consecutive under Count [I], but that's a little bit of an overkill and absolutely

---

[6] Davis admitted to the court that this was not her first time appearing before it. *Davis*, 724 So. 2d at 344 (¶9). The record, however, was devoid of any information regarding Davis' prior criminal history or convictions. *Id*. Furthermore, Davis was not tried as a repeat offender. *Id.*

unnecessary.

¶22.    While Williams' sentence may be severe, it does not raise the same proportionality concerns seen in *Davis*. Williams is not a first-time offender, and the circuit court repeatedly identified instances it felt were "overkill" and "absolutely unnecessary." Furthermore, "[d]rug offenses are very serious, and the public has expressed grave concern with the drug problem." *Stromas v. State*, 618 So. 2d 116, 123 (Miss. 1993). In response, the legislature enacted stringent repercussions. *Id*.

¶23.    Williams' sentence was within the statutory guidelines and met the legislature's intent for "stiff penalties for drug offenders"; therefore, Williams' sentence did not require a proportionality review under *Solem*. *Id*. There is a heavy burden that must be met when one asserts that a sentence violates the Eighth Amendment, and only in rare cases where this burden is met should the court remand. *Id*. Finding no inference of gross disproportionality, this issue is without merit.[7]

**II.    Whether the circuit court erred by excluding Michael Brown's affidavit.**

¶24.    Williams asserts that the circuit court erred by not admitting Michael Brown's

---

[7] Under Williams' Eighth Amendment claims, Williams also references Mississippi's prison conditions. However, he cites no authority and provides no argument. "The law is well established that points not argued in the brief on appeal are abandoned and waived." *Arrington v. State*, 267 So. 3d 753, 756 (¶8) (Miss. 2019). Further, "[f]ailure to cite relevant authority obviates the appellate court's obligation to review such issues." *Id*. at (¶9). Williams' failure to cite an argument or any authority regarding Mississippi's prison conditions renders it waived.

affidavit, thereby hindering Williams' defense. Brown, one of the two men Williams drove to the law firm's office, executed an affidavit accepting all liability for the marijuana confiscated. Defense counsel argued that the affidavit should be admitted under the unavailable declarant hearsay exception. Counsel explained that all attempts to serve Brown were unsuccessful, thus making Brown an unavailable witness.

¶25.    In reviewing an admission or exclusion of evidence, the court will apply an abuse of discretion standard of review. *Jenkins v. State*, 102 So. 3d 1063, 1065 (¶7) (Miss. 2012). Unless a substantial right is adversely affected, an error involving an admission or exclusion of evidence will not be reversed. *Id.*; *see also U. Servs. Auto Ass'n v. Lisanby*, 47 So. 3d 1172, 1179 (¶25) (Miss. 2010). We review constitutional issues de novo. *Id*. (citing *Hayden v. State*, 972 So. 2d 525, 536 (¶50) (Miss. 2007)).

¶26.    Michael Brown's affidavit constitutes hearsay and was inadmissible absent an exception. M.R.E. 802. "[I]f the declarant is unavailable as a witness," Mississippi Rule of Evidence 804 applies. Rule 804(a)(5)(B) explains that a declarant is unavailable when he "is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure . . . the declarant's attendance or testimony, in the case of a hearsay exception under Rule 804(b)[(3)] . . . ." Williams attempted to introduce Brown's affidavit under Rule 804(b)(3)'s "a statement against interest" exception. Rule 804(b)(3) provides:

(3) *Statement Against Interest*. A statement that:

11

(A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and

(B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it tends to expose the declarant to criminal liability and is offered to exculpate the accused.

M.R.E. 804(b)(3). Based on the rule, three requirements must be met for the admission of a statement that tends to expose the declarant to criminal liability and is offered to exculpate the accused:

> (1) that the declarant is unavailable as a witness, (2) that the statement so far tends to subject the declarant to criminal liability that a reasonable person in his position would not have made the statement unless he believed it to be true, and (3) that corroborating circumstances clearly indicate the trustworthiness of the statement.

*Hartfield*, 161 So. 3d at 131 (¶11). "Such declarations against penal interest are admissible on the theory that they are reliable, because no reasonable person would make such a statement and invite possible criminal prosecution if the statement were not true." *Id.* (internal quotation marks omitted).

¶27. The first admissibility requirement was not satisfied because Williams and his defense counsel failed to apply a reasonable and diligent effort to secure Brown's presence at trial. While Williams' counsel claimed that they were unable to locate and serve a subpoena on Brown, his counsel did not request a trial subpoena until the Friday prior to the start of trial. Mississippi law requires that a party make a diligent effort to procure the testimony of an

12

"unavailable" witness. *Jones v. State*, 912 So. 2d 501, 505 (¶9) (Miss. Ct. App. 2005); *see also Randall v. State*, 806 So. 2d 185, 203 (¶30) (Miss. 2001) (The court reiterated that the burden "is to demonstrate diligent effort, not to do everything conceivable."). Here, the circuit court found that Williams had not exercised due diligence in trying to locate and serve a subpoena on Brown. Thus, Brown was not an unavailable witness as required under Rule 804(a)(5)(B).

¶28. Even though our inquiry could end here, we proceed to address Williams' argument that the statement given by Brown was a statement against interest. To determine whether the affidavit's statement was against Brown's interest, we "consider[] the statement in light of the surrounding circumstances." *Small v. State*, 224 So. 3d 1272, 1276-77 (¶12) (Miss. Ct. App. 2017). Additionally, "[t]he proponent is required to show that the statement clearly and directly implicates the declarant himself in criminal conduct." *Hartfield*, 161 So. 3d at 136 (¶15). The burden was on Williams to prove that Brown's affidavit, when executed, exposed him to criminal liability. A review of the record reveals that Brown's affidavit does place all the criminal liability regarding the confiscated marijuana on him. However, even if Brown's affidavit is deemed against his penal interest, Williams failed to show the statement's "corroborating circumstances . . . indicat[ing]. . . its trustworthiness." M.R.E. 804(b)(3)(B). While Brown's affidavit was sworn, another witness's affidavit was obtained on the same day and manner as Brown's. Dexter Smith testified that not only had Williams transported him to the attorney's office to obtain a similar affidavit to Brown's, but that Smith was scared

13

of Williams and that Williams had threatened the lives of Smith's family. Smith's testimony resulted in a recantation of his affidavit. In determining the admissibility of Brown's affidavit, the circuit judge noted and considered Williams' two prior felony convictions, his general feeling that these types of statements were products of coercion, and Smith's recantation of his affidavit, which was taken on the same day as Brown's. Based on those considerations, the circuit judge found that the affidavit was not supported by corroborating circumstances clearly indicating its trustworthiness. We agree. Therefore, we cannot say that the circuit court abused its discretion in finding that Brown's affidavit was hearsay not within an exception.

### III. Whether the State violated the Fourteenth Amendment's Equal Protection Clause.

¶29. Williams asserts that the State must treat him, as an African American convicted of crimes, the same as it treats other individuals or classes of individuals. Williams does not state a specific claim as to how the State has treated him differently. Williams' equal-protection claim fails. A defendant asserting an equal-protection claim has the burden of proving "the existence of purposeful discrimination." *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987). Additionally, "a criminal defendant must prove that the purposeful discrimination had a discriminatory effect on him." *Id*. Thus, for an equal-protection claim to succeed, the defendant must show "that the decisionmakers in his case acted with discriminatory purpose." *Id*.

¶30. Williams provides no evidence that the State acted in a discriminatory manner and

14

solely relies on statistics from Mississippi Department of Corrections fiscal year 2019 annual report. The United States Supreme Court has established that statistical evidence alone is insufficient to prove discrimination. *Id*. at 292-97.

¶31. Williams fails to show how the State has treated him any differently than another individual or classes of individuals. He has cited no authority nor made any meaningful argument in support of his assertion. An "appellant has the duty to make more than mere assertions and should set forth reasons for his arguments and cite authorities in their support." *Dean v. State*, 305 So. 3d 1200, 1209 (¶26) (Miss. Ct. App. 2020) (quoting *White v. State*, 818 So. 2d 369, 371 (¶7) (Miss. Ct. App. 2002)). If a party fails to provide any supporting authority, this Court is "under no duty to consider assignments of error when no authority is cited." *Id.* Here, Williams failed to make any meaningful arguments or cite any supporting authority regarding his equal-protection claim. Therefore, this assignment of error is procedurally barred from review.

### IV. Whether the circuit court erred when it admitted Dexter Smith's statement.

¶32. Williams claims that the court erred when it allowed Dexter Smith's statements to come in through an officer's testimony. Williams claims that Smith's statement at the time of Smith's arrest was hearsay and should have been excluded.

¶33. "'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Swinney v. State*, 241 So. 3d 599, 609 (¶36) (Miss. 2018) (quoting M.R.E. 801(c)). It is within the

15

circuit court's discretion whether to admit or suppress evidence, but the circuit court's discretion must operate within the parameter of the Mississippi Rules of Evidence. *Id.*; *see also Franklin v. State*, 136 So. 3d 1021, 1028 (¶22) (Miss. 2014). Only where abuse of that discretion can be shown to cause prejudice to the defendant is reversal required. *Id.* "When determining whether a statement is prejudicial, th[e] Court has established an objective test asking how a reasonable objective observer would under the circumstances be likely to perceive the statement." *Id.* at 1029 (¶26) (internal quotation marks omitted). While Williams argues that the statements given by Lieutenant Steed are hearsay, this Court has held that:

> An officer's testimony being offered to explain why he or she acted as he or she did, and not for the truth of the matter asserted, is not hearsay and is admissible. Information obtained in the course of an investigation is admissible when it is for providing the basis of the investigation and ultimate arrest of the defendant.

*Liddell v. State*, 281 So. 3d 34, 37 (¶6) (Miss. Ct. App. 2019) (quoting *Jefferson v. State*, 214 So. 3d 1071, 1078 (¶19) (Miss. Ct. App. 2016)).

¶34. On the day Smith was arrested he was weed-eating at Williams' home. An undercover agent disguised as a FedEx driver delivered the package filled with the packaged marijuana to the home and delivered it to Smith, who proceeded to place the package in the carport, at which point officers exited the van they were waiting in. As Lieutenant Steed was placing Smith in handcuffs, Smith stated he was there only to weed-eat and the person who owned the home told him that FedEx would deliver a package that morning. The State argued that the statement was given without questioning from the police. The State further asserted that

16

the statement was not being offered to prove the truth of the matter asserted but to show where officers went in the course of the investigation after hearing Smith's statement. We find that this statement was properly admitted because Steed was describing why he focused his attention on Williams, and it was not offered for the truth of the matter asserted.

¶35.   Furthermore, Smith also testified at Williams' trial, and the jury heard from Smith the same narrative as was present in Lieutenant Steed's testimony. Smith was under oath and subjected to cross-examination, eliminating any prejudice to Williams. If no prejudice is present, there is generally no reversible error. *Robinson v. State*, 105 So. 2d 766, 768 (Miss. 1958). Accordingly, we find that this issue lacks merit.

### V.      Whether the circuit court erred by refusing jury instruction D-7.

¶36.   Williams argues that the circuit court erred in refusing the defense's requested jury instruction on circumstantial evidence.

¶37.   A circuit court's giving or refusal of jury instructions is reviewed for abuse of discretion. *Taylor v. State*, 109 So. 3d 589, 595 (¶18) (Miss. Ct. App. 2013). "When reviewing the giving or refusal of jury instructions, we do not view the jury instructions in isolation, but instead we consider them as a whole." *Id*. (citing *Rushing v. State*, 911 So. 2d 526, 537 (¶24) (Miss. 2005)).

¶38.   Williams claims that the circuit court erred in failing to give the defense's circumstantial evidence instruction, D-7, which stated:

> Jury Instruction D-7: The Court instructs the Jury that if there be any fact or circumstances in this case susceptible to two interpretations, one favorable and

17

the other unfavorable to the Defendant, Lavar Williams, and when the Jury has considered such fact or circumstances with all the other evidence, there is reasonable doubt as to the correct interpretation, then you, the jury, must resolve such doubt in favor of the Defendant, and place such fact or circumstances the interpretation most favorable to the Defendant.

¶39. Williams contends that because there was no confession or any eyewitnesses, that the evidence was, therefore, circumstantial, and the court's failure to give the circumstantial evidence instruction was in error.

¶40. Our supreme court has held that "[d]irect evidence . . . must directly and not by inference implicate the accused and not just show that there has been a crime." *Burleson v. State*, 166 So. 3d 499, 509 (¶29) (Miss. 2015) (internal quotation mark omitted). "[D]irect evidence include[s] an admission or confession by the defendant to 'a significant element of the offense,' or eyewitness testimony 'to the gravamen of the offense charged.'" *Id*. (quoting *Kirkwood v. State*, 52 So. 3d 1184, 1187 (¶10) (Miss. 2011)).

¶41. Circumstantial evidence, however, is "evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist." *Id.* (quoting *Keys v. State*, 478 So. 2d 266, 268 (Miss. 1985)). "A circumstantial-evidence instruction provides that the State must prove the defendant guilty beyond a reasonable doubt and to the exclusion of all reasonable hypotheses consistent with innocence." *McInnis v. State*, 61 So. 3d 872, 875-76 (¶11) (Miss. 2011) (emphasis omitted). Further, where "the [s]tate relies on circumstantial evidence, it must be such as to exclude every other reasonable hypothesis than that the contention of the [s]tate is true, and that throughout the burden of proof is on the

18

[s]tate." *Pitts v. State*, 241 So. 2d 668, 670 (Miss. 1970).

¶42. We find no error in the circuit court's refusal of Williams' circumstantial evidence instruction. "To receive the two-theory instruction, the evidence must be purely circumstantial and two reasonable hypotheses or theories arising out of the evidence must be presented to the jury." *Johnson v. State*, 235 So. 3d 1404, 1412 (¶24) (Miss. 2017).

¶43. Here, there was direct evidence. Our supreme court has also held that "control of the place where drugs are found is enough to amount to direct evidence of constructive possession." *Jordan v. State*, 158 So. 3d 348, 352 (¶11) (Miss. Ct. App. 2014).

¶44. Williams testified that he used to live at that home but was currently staying with his girlfriend. A search of the home produced Williams' clothes, medicine, and other personal items along with his wallet, mail, and vehicle. Furthermore, Dexter Smith's testimony also serves as evidence that Williams intended to receive the marijuana. Only if evidence is wholly circumstantial is the denial of a circumstantial evidence instruction considered reversible error. *Nobles v. State*, 241 So. 2d 826, 828 (Miss. 1970). Finding that the circuit court did not error in refusing jury instruction D-7, this issue is without merit.

### VI. Whether the circuit court erred by denying Williams' motion for a directed verdict for insufficiency of the evidence.

¶45. Williams asserts that his convictions should be reversed and rendered because of an insufficiency of the evidence. *See Newell v. State*, 175 So. 3d 1260, 1267 (¶5) (Miss. 2015). "A challenge to the sufficiency of the evidence is reviewed in the light most favorable to the State, giving the State the benefit of all favorable inferences reasonably drawn from the

19

evidence." *Ward v. State*, 285 So. 3d 136, 140 (¶14) (Miss. 2019) (internal quotation mark omitted) (quoting *Henley v. State*, 136 So. 3d 413, 415-16 (¶8) (Miss. 2014)).

¶46.    The sufficiency of the evidence may be challenged by the defendant by moving for a directed verdict, requesting a peremptory instruction, or by moving for a judgment notwithstanding the verdict. *Pace v. State*, 242 So. 3d 107, 177 (¶24) (Miss. 2018) (citing *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993)). In this case, Williams moved for a directed verdict at the close of his trial and challenged the sufficiency of the evidence. The circuit court denied this motion.

¶47.    It is important to note that the relevant question where a challenge to the sufficiency of the evidence is concerned is "whether, after viewing the evidence, in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307 (1979) (citations omitted). If the facts and inferences considered in a challenge to the sufficiency of the evidence "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," the appellate court should reverse and render. *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985). However, where the evidence is of such quality and weight that, "having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence will be deemed to have been sufficient. *Id*.

¶48. Considering the evidence in the light most favorable to the State, we find that there was sufficient evidence to convict Williams under all counts. Smith testified to the surrounding circumstances of the marijuana delivery, and evidence supporting Williams' ownership of the home and its contents was presented to the jury. The jury, after hearing the evidence and testimony presented, convicted Williams. We find that the evidence was sufficient to support the jury's verdict. This issue is without merit.

## CONCLUSION

¶49. Finding no reversible error, the judgment is affirmed.

¶50. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE AND SMITH, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. EMFINGER, J., NOT PARTICIPATING.**